No. 21-30041

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 1:17-cr-00037-BLW |
| Plaintiff-Appellee, | ) | DISTRICT OF IDAHO |
| | ) | BOISE |
| vs. | ) | |
| | ) | |
| SCOTT ALEXANDER LANEY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

---

## OPENING BRIEF OF THE APPELLANT

On appeal from the United States District Court for the District of Idaho the Honorable B. Lynn Winmill, United States District Judge, presiding.

---

Dennis Benjamin
NEVIN, BENJAMIN & McKAY LLP
P.O. Box 2772
Boise, ID 83701
208-343-1000
db@nbmlaw.com

Attorneys for Defendant-Appellant

# TABLE OF CONTENTS

I.   Table of Contents ..............................................................iii

II.  Subject Matter, Jurisdiction, and Bail Status .................. 1

A.   Nature of the Case .......................................................... 1

B.   Jurisdiction ...................................................................... 2

C.   Bail Status ...................................................................... 2

III.  Issues Presented for Review  ......................................... 3

     A.   Does the record show that Mr. Laney knowingly, intelligently, and voluntarily waived his right to a jury trial?

     B.   Did the court err by denying the motion for a new trial based upon the invalid jury trial waiver?

     C.   At sentencing, did the court err by applying a two-point enhancement for obstruction of justice under U.S.S.G. § 3C1.1 due to Mr. Laney's disbelieved testimony at trial when the court expressly found that his testimony was not intentionally false?

IV.  Statement of the Case ................................................3

V.   Argument ............................................................... 5

     A.   The Record does not Show that Mr. Laney Knowingly, Intelligently and Voluntarily Waived his Right to a Jury Trial ............................................................. 5

         1.   Facts pertaining to argument ........................... 5
         2.   Legal standards and standard of review ............. 10
         3.   Why relief should be granted ........................... 11

     B.   The Court Erred by Denying the Motion for a New Trial Based Upon the Invalid Waiver ............................. 21

         1.   Facts pertaining to argument .......................... 21

2.   Legal principles and standard of review.......................21

3.   Why relief should be granted .....................................22

C.   The Court Erred by Applying the Enhancement for Obstruction of Justice Under U.S.S.G. § 3C1.1 For Perjury at Trial After Finding that Mr. Laney Firmly Believed he was Telling the Truth ................ 23

1.   Facts pertaining to argument ...................................... 23

2.   Legal principles and standard of review......................27

3.   Why relief should be granted .....................................29

VI.   Conclusion ..................................................................... 31

# I.  TABLE OF AUTHORITIES

## Federal Cases

*Apodaca v. Oregon*, 406 U.S. 404 (1972) ............................................... 14

*Bishop,* 291 F.3d 1100 (9th Cir. 2002) ............................................... 9, 16

*Ramos v. Louisiana*, -- U.S. --, 140 S. Ct. 1390 (April 20, 2020) .......... 14

*United States v. Carty*, 520 F.3d 984 (9th Cir.), *cert. denied sub nom.,*
  *Zavala v. United States*, 553 U.S. 1061 (2008) ................................. 27

*United States v. Castro-Ponce*, 770 F.3d 819 (9th Cir. 2014) ........ 29, 30

*United States v. Christensen*, 18 F.3d 822 (9th Cir. 1994) ........ 9, 11, 16

*United States v. Cochran,* 770 F.2d 850 (9th Cir. 1985) .... 10, 11, 20, 21

*United States v. Cordova Barajas*, 360 F.3d 1037 (9th Cir.2004) ....... 27

*United States v. Duarte-Higareda*, 113 F.3d 1000 (9th Cir. 1997)
  ............................................................................................. passim

*United States v. Dunnigan*, 507 U.S. 87 (1993) ................................... 29

*United States v. Ferreira-Alameda*, 815 F.2d 1251 (9th Cir. 1986) .... 10

*United States v. Garro*, 517 F.3d 1163 (9th Cir.2008) ......................... 27

*United States v. Gonzalez-Flores*, 418 F.3d 1093 (9th Cir. 2005) . 11, 12

*United States v. Hinkson,* 585 F.3d 1247 (9th Cir. 2009) .................... 22

*United States v. Jimenez*, 300 F.3d 1166 (9th Cir.2007) ..................... 27

*United States v. Laney*, 881 F.3d 1100 (9th Cir. 2018) ....... 6, 11, 21, 22

*United States v. Pelisamen*, 641 F.3d 399 (9th Cir. 2011).................. 21

*United States v. Shorty*, 741 F.3d 961 (9th Cir. 2013)................. 11, 21

*United States v. Tamman*, 782 F.3d 543 (9th Cir. 2015)............... 17, 18

**Federal Statutes**

18 U.S.C. §§ 152 ................................................................. 2

18 U.S.C. § 1028A ............................................................. 1

18 U.S.C. § 1347 ............................................................... 1

18 U.S.C. § 1621 ............................................................. 28

18 U.S.C. § 3231 ................................................................ 2

18 U.S.C. § 3742(a)(2) ...................................................... 2

28 U.S.C. § 1291 ................................................................ 2

U.S. Const. amend. VI....................................................... 10

**Federal Rules**

F.R.A.P. 4 .......................................................................... 2

F.R.Cr.P. 23........................................................................ 10

F.R.Cr.P. 58(g)(1) ............................................................. 2

U.S.S.G. ..................................................................... passim

iv

**Other**

Ninth Circuit Manual on Jury Trial Procedure (2013) .................12

## II.  SUBJECT MATTER, JURISDICTION, AND BAIL STATUS

## A.   Nature of the Case

Scott Laney was charged with health care fraud and aggravated identity theft. ER 164-171 (Dkt. #1). A superseding indictment was filed charging additional counts. ER 148-153 (Dkt. #47). He was found guilty, after a court trial, of nine counts of healthcare fraud and nine counts of aggravated identity theft, in violation of 18 U.S.C. § 1347 and § 1028A. ER 3 (Dkt. #131).   His motion for a new trial which argued his jury waiver was inadequate was denied. ER 89. (Dkt. #119)

He was sentenced to 42 months of incarceration. The court imposed concurrent 18-month sentences for all the Health Care Fraud convictions. It then imposed the mandatory minimum 24-month sentence on each of the Aggravated Identity Theft counts. As required, the court ran the Aggravated Identity Theft sentences consecutive to the Health Care Fraud sentences. ER 3 (Dkt. #131)

This Court should vacate the judgment and remand for a new trial because the jury waiver was not knowing, intelligent, and voluntary. In the alternative, this Court should vacate the sentence

1

and remand because the district court erred in applying the two-point offense level enhancement under U.S.S.G. §3C1.1.

## B. Jurisdiction

The District Court had subject matter jurisdiction pursuant to 18 U.S.C. §§ 152(1), 2(b) and (3), and 18 U.S.C. § 3231. The Notice of Appeal was filed on the day after the entry of judgment. ER 172 (Dkt. #125.) Therefore, the appeal is timely. F.R.A.P. 4(b)(1)(A)(i). An Amended Notice of Appeal was filed. ER 9 (Dkt. #126).

This Court has appellate jurisdiction because the appeal is from a final order that disposes of all claims with respect to the parties, *i.e.,* a judgment and sentence imposed in a criminal case. F.R.Cr.P. 58(g)(1); F.R.A.P. 4(b); 28 U.S.C. § 1291. The Court also has jurisdiction under 18 U.S.C. § 3742(a)(2), because Mr. Laney's Sentencing Guideline Range was improperly calculated, which resulted in a higher Guideline Range.

## C. Bail Status

Mr. Laney has a voluntary surrender date of June 9, 2021. He has been designated for assignment to the Federal Prison Camp-

2

Yankton, Yankton, South Dakota.

## III.   ISSUES PRESENTED FOR REVIEW

A.   Does the record show that Mr. Laney knowingly, intelligently, and voluntarily waived his right to a jury trial?

B.   Did the court err by denying the motion for a new trial based upon the invalid jury trial waiver?

C.   At sentencing, did the court err by applying a two-point enhancement for obstruction of justice under U.S.S.G. § 3C1.1 due to Mr. Laney's disbelieved testimony at trial when the court expressly found that his testimony was not intentionally false?

## IV.   STATEMENT OF THE CASE

This case arises from Scott Laney's work in 2015 as a commissioned salesman for Millennium Health ("Millennium"), a national drug and genetic testing lab company. He worked with another salesperson, Joe Johnson, who later transferred some of his business to a company called Pinnacle Health. Mr. Laney's sales territory included southern Idaho, and his leads were third-party providers, that is area companies that needed to screen people for

3

legal and illegal drug use. If a lead was interested in contracting with Millennium, he was responsible for signing up the company and submitting paperwork to Millennium. Millennium rules required that a company ordering a urine drug test identify a health care provider and submit the name and the provider's National Provider Identifier ("NPI"). The NPI is a unique number issued by Centers for Medicare and Medicaid Service to providers who apply and meet the criteria.

The government alleged that Mr. Laney knew that the third-party providers were not providing individualized treatment to those being drug tested and thus, he knew the tests were not medically reasonable or necessary and should not be billed to Medicare or Medicaid. Further, the government alleged that Mr. Laney used the providers' names and NPI numbers on the New Customer Registration and Custom Profile forms without the providers' approval. The government concluded that this allowed Millennium to bill Medicaid and Medicare for medical services deemed to be unnecessary. The government claimed Mr. Laney facilitated the submission of fraudulent reimbursement charges.

4

# V.  ARGUMENT

## A.  *The Record does not Show that Mr. Laney Knowingly, Intelligently and Voluntarily Waived his Right to a Jury Trial.*

### 1.  <u>Facts pertaining to argument.</u>

At the arraignment on the Indictment, the Magistrate Judge informed Mr. Laney that, "You have the right to a trial by jury." ER 161 (Dkt. #93; Transcript (10/01/2019) p. 4, l. 13-14.). No further explanation of the specifics of that right was given.

Mr. Laney then filed a written waiver of jury trial. It said, in its entirety: "I, Scott Laney, acknowledge that I was fully informed of my right to trial by jury in this cause. I hereby waive that right, request the court to try all issues of fact and law without a jury." ER 157 (Dkt. #35).  The government "consent[ed] to the defendant's waiver of a jury trial." *Id.*

Nearly six months after this waiver was filed, the government filed a Superseding Indictment, which added an allegation that Mr. Laney facilitated the submission of fraudulent charges to Medicare through Pinnacle Laboratory Services using a nurse practitioner's

5

name and NPI without her permission, and that Laney made
payments to a co-conspirator. It also added an additional count of
health care fraud (count 9) and of aggravated identity theft (count 18).
ER 148-156 (Dkt. #47). At the arraignment, the Magistrate repeated
that same jury trial advisement given earlier. ER 146 (Dkt. #94
Transcript (06/18/2020) p. 4, l. 8-9 ("You have the right to a trial by
jury.")).

Prior to trial, the government asked the court to obtain an oral
jury trial waiver.

> MS. CRANE [AUSA]: Your Honor, I would ask the Court to
> take up one initial matter. Based on some dicta in the Ninth
> Circuit case *United States vs. Laney,* there is
> some indication that when the defendant opts to proceed with a
> bench trial, that it is a good idea for the Court to inquire
> before the bench trial begins if the defendant is, in fact,
> agreeable to proceeding that way.

> THE COURT: All right. That's fine. As I read the case law, I
> thought the requirement was that it had to be submitted in
> writing. And my understanding is that has been done, but
> there is no reason not to explore that with Mr. Laney.
> I assume, Mr. Charney, you have no objection?

> MR. CHARNEY [Defense counsel]: I have no objection.

> THE COURT: Mr. Laney, you understand, do you not, that

6

you absolutely have the right --constitutional right to a trial by jury in this case? The jury would be composed of 12 individuals. We would probably have alternates, but only 12 jurors would actually deliberate to the verdict. You would have the right to participate in selecting the jury, to review their background, to exercise challenges for cause if you felt or your attorney felt that there was some conflict of interest.

You also would have the right to exercise what's called peremptory challenges. In fact, you'd have 10 peremptory challenges to the panel. The jury would be instructed that they are to be judges of the fact in the same way that I am the judge of the law.

But by agreeing to waive or requesting that the jury not be involved in the case, you are, in essence, turning that all over to me and waiving your constitutional right to trial by a jury of your peers.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Okay. And after consultation with counsel, that's your decision; correct?

THE DEFENDANT: Yes, it is.

THE COURT: All right. Ms. Crane, is there anything else you want me to cover?

MS. CRANE: No, Your Honor. Thank you.

ER 143-144 (T Vol 1, p. 15, l. 10-p. 16, l. 23).

Mr. Laney, assisted by additional post-trial counsel, moved the court to grant a new trial because his jury trial waiver was not knowing, intelligent, and voluntary. ER 135-138 (Dkt. #87). In support of the motion, Mr. Laney submitted the affidavit of lead counsel, Dennis Charney. The Declaration of Counsel (ER 128-29, Dkt. #89) shows that Mr. Laney was advised of the "*basic* difference between a bench trial and jury trial[.]" ER 129 (Dkt. #89) (emphasis original). While counsel believed the differences had been explained in greater detail at the arraignment, that turned out not to be the case. (A local attorney covered the arraignments for trial counsel, who lives in Wyoming.) Counsel also said that, in hindsight, he should have revisited the jury waiver issue after the Superseding Indictment was filed "because the sentence that could have been imposed on Mr. Laney, as well as the elements of proof, were significantly changed[.]" *Id.*

Mr. Laney stated in his affidavit that he was not advised of "the aspects of a jury trial, such as that the jury must be composed of twelve persons from my community, that I could participate in the

8

selection of the jury, or that all members of the jury must unanimously agree on a verdict in a jury trial." ER 133 (Dkt. #88). Moreover, counsel did not discuss with Mr. Laney the benefits and burdens of a jury trial to assist him in choosing whether to waive a jury. *Id.*

The court denied the new trial motion. ER 89 (Dkt. #119). It held that any shortcomings in the Court's colloquy were offset by Mr. Laney's written waiver. ER 101-102. It continued:

> Following the advisement, Laney confirmed that he understood his right to a jury trial and wished to waive it. Dkt. 94 at 16. What is not reflected in the transcript is that throughout the exchange Laney was calm and appeared confident in his decision. His mental or emotional state did not call into question the validity of the waiver. *See United States v. Christensen*, 18 F.3d 822, 826 (9th Cir. 1994).
> Laney is educated, articulate, and was clearly involved in the preparation of his own defense. He was advised by competent counsel throughout the proceedings. *See* [*United States v.*] *Bishop,* 291 F.3d [1100,] 1114 [(9th Cir. 2002)]. Laney's post-trial, and post-conviction, statements do not square with his statements and demeanor prior to trial, nor his written waiver stating he had been fully advised of his right to a jury trial.
> Considering the entire context of the situation the Court finds that Laney knowingly, intelligently, and voluntarily, waived his right to a trial by jury.

ER 102 (Dkt. #119).

9

2.  <u>Legal standards and standard of review.</u>

A criminal defendant's right to a jury trial is a fundamental right guaranteed by the Sixth Amendment. U.S. Const. amend. VI; *United States v. Cochran,* 770 F.2d 850, 851 (9th Cir. 1985). The right to a jury trial may only be waived if four requirements are met: (1) the waiver is in writing, Fed. R. Crim. P. 23(a); (2) the government consents, *id.*; (3) the court accepts the waiver, *id.*; and (4) the waiver is made voluntarily, knowingly, and intelligently. *Cochran*, 770 F.2d at 851. Compliance with the requirements of Rule 23(a), which embodies the first three requirements, in usual circumstances creates a presumption that the fourth requirement, that the waiver is voluntary, knowing, and intelligent, is met. *Id.* However, "[t]he general rule is that a showing that the defendant's consent to waive his right to a jury trial was knowing, voluntary and intelligent is a necessary precondition to an effective Rule 23(a) jury trial waiver, one distinct from the requirement that the waiver be written." *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1986), citing 8A Moore's Federal Practice para. 23.03[2][c] (2d ed. 1984).

10

As to the fourth *Cochran* requirement, courts have a "serious and weighty responsibility" to determine whether a waiver is knowing and intelligent. *United States v. Laney*, 881 F.3d 1100, 1107 (9th Cir. 2018), *quoting United States v. Christensen*, 18 F.3d 822, 826 (9th Cir. 1994). In making that determination, the Court must "indulge every reasonable presumption against waiver of fundamental constitutional rights." *Id, quoting United States v. Gonzalez-Flores*, 418 F.3d 1093, 1102 (9th Cir. 2005).

This Court reviews the adequacy of a jury waiver de novo. *United States v. Laney*, 881 F.3d 1100, 1106 (9th Cir. 2018); *United States v. Shorty*, 741 F.3d 961, 965 (9th Cir. 2013). Here, the evidence shows the written waiver was inadequate and the oral waiver was not knowing, intelligent, and voluntary.

3. <u>Why relief should be granted.</u>

The jury trial waiver was not valid because Mr. Laney was never advised that: 1) a jury is made up of members of the community and 2) those community members must unanimously agree before a verdict may be returned. Consequently, the new trial motion should have

11

been granted.

To determine whether the waiver is voluntary, knowing, and intelligent:

> The district court should inform the defendant that (1) [a] twelve members [b] of the community compose a jury, (2) the defendant may take part in jury selection, (3) a jury verdict must be unanimous, and (4) the court alone decides guilt or innocence if the defendant waives a jury trial. Furthermore, the district court should question the defendant to be sure he understands the benefits and burdens of a jury trial and freely chooses to waive a jury.

*United States v. Duarte-Higareda*, 113 F.3d 1000, 1002 (9th Cir. 1997) (citation omitted, brackets added); *accord, United States v. Gonzalez-Flores*, 418 F.3d 1093 (9th Cir. 2005); *see also* Ninth Circuit Manual on Jury Trial Procedures, p. 6-7 (2013).

Here, the presumption of a valid waiver is overcome for several reasons. To begin, the written waiver was filed before the filing of the Superseding Indictment, which added Count 9 and 18.   Compare ER 164-171 (Dkt. #1) and ER 148-156 (Dkt. #47). Thus, the presumption should not apply as to those counts.

In addition, the written Waiver of Jury Trial did not set out any

12

of the required advisements. Compare ER 157 (Dkt. #35) and *Duarte-Higareda* 113 F.3d at 1002.[1] Although it contains conclusory, boiler-plate language that Mr. Laney was "fully informed of [his] right to trial by jury," there was no way for him to know whether that was the case since he was dependent upon the Court and counsel for that information. And, at the time of signing, Mr. Laney had not been given any of the *Duarte-Higareda* advisements by the Magistrate. ER 161; (Dkt. #93, T (10/01/2019) p. 4, l. 13-14); ER 146 (Dkt. #94, T (06/18/2020) p. 4, l. 8-9.) Finally, his counsel had not fully advised him of his Sixth Amendment rights. He only explained the *basic* difference between a bench and jury trial. ER 129.

No prior knowledge of the *Duarte-Higareda* advisements can be presumed. There would be no need for the advisements if everyone were independently aware of the details of Sixth Amendment law.

---

1 At most, the request that the Court "try all issues of fact and law without a jury" implies that Mr. Laney understood one of the *Duarte-Higareda* advisements. At the same time, it does not expressly say the court alone would decide guilt or innocence per *Duarte-Higareda*.

13

(Again, even the court did not fully articulate the advisements off-the-cuff and even the government did not recognize the omitted information in the oral advisement.)   In fact, it was not clear that a criminal defendant has a Sixth Amendment right to a unanimous jury in both state and federal cases until three months *after* the written waiver was signed on 01/17/2020. *See Ramos v. Louisiana*, -- U.S. --, 140 S. Ct. 1390, 1397 (April 20, 2020) (holding that Sixth Amendment right to jury trial requires a unanimous verdict to convict a defendant of a serious offense, *abrogating Apodaca v. Oregon*, 406 U.S. 404 (1972)). Even then, three Justices disagreed. 140 S. Ct., at 1425.

The record shows that Mr. Laney was not advised by the district court that members of the community comprise the jury (advisement 1[b] in *United States v. Duarte-Higareda*) and was not advised that a jury must return a unanimous verdict (advisement 3). The government did not argue below that the court's oral advisement complied with *Duarte-Higareda*.

Furthermore, the court did not "question the defendant to be sure he underst[ood] the benefits and burdens of a jury trial and freely

14

chooses to waive a jury," pursuant to *Duarte-Higareda*, 113 F.3d at
1002. Nor did the government remind the Court, when asked if there
was anything else to cover, of the missing advisements or the lack of
questioning by the Court to be sure Mr. Laney understood the benefits
and burdens of a jury trial and freely chose to waive a jury.

The evidence submitted in support of the new trial motion shows
Mr. Laney was not adequately advised. While counsel advised Mr.
Laney of the basic differences, he believed the jury trial right had been
explained in greater detail at the original arraignment. That, however,
did not turn out to be the case. And Mr. Laney states that he was not
advised of "the aspects of a jury trial, such as that the jury must be
composed of twelve persons from my community, that I could
participate in the selection of the jury, or that all members of the jury
must unanimously agree on a verdict in a jury trial." ER 133 (Dkt.
#88). Moreover, counsel did not discuss with Mr. Laney the benefits
and burdens of a jury trial to assist him in choosing whether to waive
a jury. *Id.*

Mr. Laney trusted counsel's advice to waive and did not press

15

him on the details of the waiver. *Id.* At the same time, he did not understand that a "jury of your peers" meant that the jury pool must represent a fair cross-section of the members of the community. Nor was he advised that a jury verdict must be unanimous or that he could withdraw the jury trial waiver after the government filed the Superseding Indictment. Finally, he said that he "would not have waived the jury had I known that a single juror out of twelve could prevent me from being convicted." *Id.*

The district court denied the motion for a new trial, ruling:

What is not reflected in the transcript is that throughout the exchange Laney was calm and appeared confident in his decision. His mental or emotional state did not call into question the validity of the waiver. *See United States v. Christensen*, 18 F.3d 822, 826 (9th Cir. 1994).

Laney is educated, articulate, and was clearly involved in the preparation of his own defense. He was advised by competent counsel throughout the proceedings. *See* [*United States v.*] *Bishop,* 291 F.3d [1100,] 1114 [(9ᵗʰ Cir. 2002)]. Laney's post-trial, and post-conviction, statements do not square with his statements and demeanor prior to trial, nor his written waiver stating he had been fully advised of his right to a jury trial. Considering the entire context of the situation, the Court finds that Laney knowingly, intelligently, and voluntarily, waived his right to a trial by jury.

16

ER 102 (Dkt. #119). The court's conclusion, however, is illogical, implausible, and is not supported by inferences that may be drawn from the facts in the record.

First, the court's citation to *United States v. Tamman*, 782 F.3d 543 (9th Cir. 2015), is inapt. *Tamman* is not apposite because the defendant did not challenge the adequacy of the advisements. He argued that the court should have conducted an in-depth colloquy to access his competency because he was "under the influence" of medications. 782 F.3d at 551. Mr. Laney does not make a similar claim. In addition, the defendant there was both highly educated and legally sophisticated.

> [A]s a practicing attorney and partner at a major law firm, Tamman was well aware of the rights that a jury trial would entail. The district court reasonably concluded that Tamman's competence, background, and experience ensured that he understood the mechanics of a jury trial and the rights he was waiving, even without an in-depth colloquy or a recitation of the four facts mentioned in *Cochran*. Accordingly, this court affirms the district court's finding of knowing and intelligent waiver.

*United States v. Tamman*, 782 F.3d at 552.

17

By contrast, Mr. Laney holds a bachelor's degree in business management and has no legal training. PSR p. 11, ¶ 47 (Dkt. #100). Further, since a controlled substance charge when he was 19 years old, Mr. Laney had no contacts with the criminal justice system for the following 18 years. *Id.,* p 9, ¶ 37. Unlike *Tamman*, Mr. Laney's lack of legal sophistication weighs against a finding that the court's advisement was adequate and against a finding that Mr. Laney's waiver was knowing and voluntary. Thus, the court's finding that Mr. "Laney is educated, articulate, and was clearly involved in the preparation of his own defense" does not support the court's conclusion that he was adequately advised.

The court's finding that Mr. "Laney was calm and appeared confident in his decision" is not logically related to the question at hand. He could have appeared calm and confident because he was unadvised as to the consequences of the decision.

Finally, the court's finding that Mr. Laney "was advised by competent counsel throughout the proceedings" may be correct, but competent counsel stated under oath that he only explained the basic

differences between a bench and jury trial believing that Mr. Laney had been more fully informed at the arraignments. ER 129 (Dkt. #89). It is important to note that the court does not make a finding that trial counsel is not telling the truth in his declaration. Thus, the court's conclusion that Mr. "Laney's post-trial, and post-conviction, statements do not square with his statements and demeanor prior to trial, nor his written waiver stating he had been fully advised of his right to a jury trial" is both illogical and implausible given the record and is not supported by reasonable inferences therefrom.

Considering the above, the presumption of validity should not be applied in this case because: 1) the written waiver was filed before the Indictment was corrected and should not be applied to the corrections; 2) it was filed before the filing of the Superseding Indictment and the corrections thereto and should not be applied to the additional counts; 3) the text of the waiver does not set forth the *Duarte-Higareda* advisements. Given the inadequacies in the timing and the text of the written waiver, an oral advisement was required. And the government does not contest that the incomplete oral advisement failed to comply

19

with *Duarte-Higareda.*

But even if the presumption applied, it has been rebutted. Mr. Laney's statement that he was "fully informed of my right to trial by jury," is disproved by the extrinsic evidence. The record of proceedings, the declaration of counsel and affidavit of Mr. Laney show he was not advised or aware that the jury would be comprised of members of his community or that the jury would have to unanimously agree before it could return a guilty verdict.

The evidence shows that the jury waiver was not knowing, intelligent, and voluntary, notwithstanding the written waiver. The written waiver does not set forth the *Duarte-Higareda* advisements. And it was signed prior to the filing of the Superseding Indictment. The Court's oral advisement was missing important information and that missing information was not provided to Mr. Laney by the Magistrate, the government, or by counsel. Mr. Laney did not have actual knowledge of it. Consequently, this Court upon de novo review should not find that the waiver was knowing, intelligent, and voluntary, as required by *United States v. Cochran*, 770 F.2d 850, 851

20

(9th Cir. 1985), vacate the convictions, and remand for a new trial.

**B.** *The Court Erred by Denying the Motion for a New Trial Based Upon the Invalid Waiver.*

      1.  <u>Facts pertaining to argument.</u>

Mr. Laney incorporates the statement of facts in Section A(1), above.

      2.  <u>Legal principles and standard of review.</u>

Mr. Laney incorporates the statement of legal standards in Section A(2) above. *Id.* As noted there, the proper standard of review as to the jury waiver is de novo. *United States v. Laney*, 881 F.3d at 1106; *United States v. Shorty*, 741 F.3d at 965.   But even if the denial of the new trial motion is reviewed for abuse of discretion, the general standard of review for such motions, *United States v. Pelisamen*, 641 F.3d 399, 408 (9th Cir. 2011), the convictions should still be reversed.

When this Court reviews for abuse of discretion a district court's denial of a motion for a new trial, it will first look to whether the trial court identified and applied the correct legal rule to the relief requested. Second, it will look to whether the trial court's resolution of

the motion resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson,* 585 F.3d 1247, 1263 (9th Cir. 2009):

> In other words, our abuse of discretion test means that we do not automatically affirm a district court's factual finding if we decide it is "permissible," and we do not automatically reverse a district court's factual finding if we decide a "mistake has been committed." Rather, in either case, we will affirm a district court's factual finding unless that finding is illogical, implausible, or without support in inferences that may be drawn from the record.

*Id.*

3. <u>Why relief should be granted.</u>

As set forth in Section A(3) above, the trial court's finding that the jury waiver was knowing, intelligent and voluntary was illogical, implausible, and without support in inferences that may be drawn from the record. Thus, vacation of the convictions is required whether the claim is reviewed de novo or for an abuse of discretion. *Laney, supra; Hinkson, supra.*

22

**C.** *The Court Erred by Applying the Enhancement for Obstruction of Justice Under U.S.S.G. § 3C1.1 For Perjury at Trial After Finding that Mr. Laney Firmly Believed he was Telling the Truth.*

1.  Facts pertaining to argument.

The original Presentence Investigation Report did not include an enhancement for obstruction of justice under U.S.S.G. § 3C1.1. (Dkt. #100). The government, however, filed an objection arguing for the enhancement. (Dkt. #103: Filed under seal.) Mr. Laney responded to the government's objection. (Dkt. #104: Filed under seal.).) He argued that it appeared:

> the case boiled down to the differences in recollection regarding the conversations that took place between Mr. Laney, Ms. Phillips and Ms. Hoyt. These individuals certainly have different recollections of conversations that took place five and a half years prior to trial. That said, different recollections do not lead to the conclusion that Mr. Laney's recollection of the conversations equates to perjury.

(Dkt. #117: Filed under seal.). He argued that while witnesses' testimony differed in some respects, they largely agreed and this showed "nobody was lying" and "demonstrate[d] that these conversations, as related in court five and a half years after the fact, were simply subject to different interpretations and recollections." He

23

concluded, "This does not amount to a finding of perjury and/or an intentional act on behalf of Mr. Laney to obstruct justice." (Dkt. #117: Filed under seal.)

The Final PSR agreed with the government, stating that "[t]he United States provided documentation establishing the defendant provided testimony in direct contrast to witnesses which the Court had found credible." (Dkt. #114-1: Filed under seal.) It concluded "This conduct is specifically characterized as "covered conduct" at § 3C1.1, comment. (n.4)." *Id.*

Mr. Laney's sentencing memorandum repeated his objection to the enhancement. (Dkt. 117: Filed under seal.). And at the sentencing, he argued:

> As to the difference between the conversations and what Mr. Laney testified to and what Ms. Phillips and Ms. Hoyt testified to, I don't think that the government's position regarding this is a fair one. And here is why:

> Mr. Laney had these conversations and did his best to memorialize those conversations. And then there were, of course, some documents that provided some, I guess, you know, backup that those conversations occurred, now almost six years ago.

24

People have come to court in September, five-and-a-half years after those conversations, and relayed their version of events.

. . . .

My point is this: The Court has made its finding [regarding witness believability], and we understand that and accept that. But this can boil down to a difference in recollection without necessarily Mr. Laney being found guilty or liable for obstructing justice simply because he recalled the events differently.

ER 36-38 (ST p. 17, l. 1 – p. 19, l. 9).

The court overruled Mr. Laney's objection:

Here, what is critical is that Mr. Laney testified at trial that Ms. Phillips and Ms. Hoyt had agreed to serve as medical providers for K & K and Dishion and were even enthusiastic about it, but the testimony of Phillips and Hoyt directly contradicted those statements.

I think that, standing alone, is sufficient to justify a finding that the defendant committed perjury. I think it is clearly -- *and again, I understand that Mr. Laney firmly believes that he is telling the truth.* But the reality is that all of the other facts in this case, as I found in finding him guilty, simply are contrary to that, including the testimony and statements made by Phillips and Hoyt in the way in which this was all done.

So, particularly given the aggravated identity theft conviction which required the Court to find that he used the identity of a real person without lawful authority, his

25

repeated testimony that Phillips and Hoyt agreed to be medical providers is clearly material to whether he used those identities without lawful authority, and I simply have to find that that testimony was willful.

I will say that one of the biggest challenges in any case is when a defendant takes the witness stand, emphatically denies committing the offense, but then either the jury or, in this case, the Court finds that the facts just simply don't support that version.

At that point, *while it is difficult to say that someone who has testified and done so under circumstances suggesting that he truly believes what he is saying, I have to find, nevertheless, that that testimony is perjury* and is a willful offering of perjured testimony which results in obstruction of justice.

ER 47-48 (ST p. 28, l. – p. 29, l. 20).

The application of the obstruction enhancement increased Mr. Laney's Offender Level on the Health Care Fraud counts from 16 to 18, and increased his guideline range from 21-27 months to 27-33 months. U.S.S.G. § 5 (Part A – Sentencing Table). The count imposed concurrent 18-month sentences on the Health Care Fraud counts. ER 77-78 (ST p. 58, l. 22 – p. 59, l. 4). The court varied below the guideline range by three offense levels in part due to its concern that the application of the two-point abuse of trust enhancement

26

constituted a double-counting problem. ER 48 (ST p. 29, l. 21 – p. 30, l. 9). Applying that same variance to the correct Offense Level would result in a sentence of 12 months on the Health Care Fraud counts.

### 2. Legal principles and standard of review.

All sentencing proceedings begin by determining the applicable Sentencing Guidelines Range which must be calculated correctly. The Guidelines are the starting point of sentencing and are to be kept in mind throughout the process. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir.), *cert. denied sub nom., Zavala v. United States*, 553 U.S. 1061 (2008).

A district court's factual findings for purposes of an obstruction of justice sentencing enhancement under U.S.S.G. § 3C1.1 are reviewed for clear error. *United States v. Garro*, 517 F.3d 1163, 1171 (9th Cir.2008) (*citing United States v. Jimenez*, 300 F.3d 1166, 1170 (9th Cir.2007)). The district court's characterization of a defendant's conduct as obstruction of justice within the meaning of § 3C1.1 is reviewed de novo. *United States v. Cordova Barajas*, 360 F.3d 1037, 1043 (9th Cir.2004).

27

Sentencing Guideline § 3C1.1 states: "If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the [defendant's] offense level by 2 levels." U.S.S.G. § 3C1.1 "This section provides a sentence enhancement for a defendant who engages in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding, or otherwise to willfully interfere with the disposition of criminal charges, in respect to the instant offense." U.S.S.G. § 3C1.1, comment., n. 1(c).   See also U.S.S.G. § 3C1.1, comment., n. 3(b) ("The following is a non-exhaustive list of examples of the types of conduct to which this enhancement applies: ... (b) committing, suborning, or attempting to suborn perjury").

> In determining what constitutes perjury, [the Courts] rely upon the definition that has gained general acceptance and common understanding under the federal criminal perjury statute, 18 U.S.C. § 1621. A witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory. This federal definition of perjury by a witness has remained unchanged in its material respects for over a century.

28

. . . .

Of course, not every accused who testifies at trial and is convicted
will incur an enhanced sentence under § 3C1.1 for committing
perjury. As we have just observed, an accused may give inaccurate
testimony due to confusion, mistake, or faulty memory. In other
instances, an accused may testify to matters such as lack of
capacity, insanity, duress, or self-defense. Her testimony may be
truthful, but the jury may nonetheless find the testimony
insufficient to excuse criminal liability or prove lack of intent. For
these reasons, if a defendant objects to a sentence enhancement
resulting from her trial testimony, a district court must review the
evidence and make independent findings necessary to establish a
willful impediment to or obstruction of justice, or an attempt to do
the same, under the perjury definition we have set out.

*United States v. Dunnigan*, 507 U.S. 87, 94–96 (1993). The district

court must find that a defendant's testimony was false, material, and

willful. Express findings on all three prongs are necessary for perjury

to amount to obstruction of justice. *United States v. Castro-Ponce*, 770

F.3d 819, 822 (9th Cir. 2014).

    3. <u>Why relief should be granted.</u>

As this Court has observed:

Obstruction of justice is a serious charge, and requires serious
proof. To enhance a guidelines sentencing range based on
obstruction of justice, which often results in more time served in
prison, a district court must make explicit findings that not only

29

did the defendant give false testimony, but also that the falsehoods were willful and material to the criminal charges. We decline to adopt a more forgiving standard, which could have the unintended consequence of chilling a criminal defendant's willingness to take the stand and give testimony in his or her defense. To require explicit findings on elements needed for the obstruction of justice enhancement helps ensure reliability and reviewability of a sentencing decision.

*Id.,* at 823.

But, instead of finding a willful intent to give false testimony, the court found that "Mr. Laney firmly believes that he is telling the truth." Further, the court stated that it could find that perjury occurred even in the absence of willfulness. ("[W]hile it is difficult to say that someone who has testified and done so under circumstances suggesting that he truly believes what he is saying, I have to find, nevertheless, that that testimony is perjury.") ER 48. This is inadequate under *United States v. Castro-Ponce*, *supra*; thus, the Court erred by applying the enhancement.

Vacation of the sentence is required because without the improper enhancement, the court, after applying its variance, would have imposed a concurrent sentence of twelve months instead of

30

eighteen months.

## VI.  CONCLUSION

The record does not show that the jury trial waiver was knowing, intelligent, and voluntary. Mr. Laney has overcome the presumption of validity which attends a written waiver. Thus, the convictions should be vacated, and the case remanded for a jury trial.

Alternatively, the court erred by applying the obstruction of justice enhancement at sentencing after it found that Mr. Laney did not willfully testify falsely. Thus, this Court should vacate the sentence and remand for resentencing.

Respectfully submitted this 6th day of May 2021.

NEVIN, BENJAMIN & McKAY LLP

/s/Dennis Benjamin
Attorneys for Scott Laney

31

## STATEMENT OF RELATED CASES

The undersigned attorney states the following: I am unaware of any related cases currently pending in this court.

Respectfully submitted this 6th day of May 2021.

/s/Dennis Benjamin

## CERTIFICATE OF COMPLIANCE

I am the attorney for the appellant. This brief contains 6195 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6). I certify that this brief complies with the word limit of Cir. R. 32-1.

Dated this 6th day of May 2021.

/s/Dennis Benjamin

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of May 2021, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing:

Darci Ward
Assistant United States Attorney
District of Idaho
Darci.Ward@usdoj.gov

/s/Dennis Benjamin

33